## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| FOUNDATION CAPITAL RESOURCES, INC.,<br>   *Plaintiff*,<br><br>  v.<br><br>PRAYER TABERNACLE CHURCH OF LOVE, INC.,<br>   *Defendant.* | No. 3:17-cv-00135 (JAM) |

## ORDER GRANTING RELIEF FROM DEFAULT JUDGMENT

Ten years ago defendant Prayer Tabernacle Church of Love, Inc. ("the Church") took out a series of mortgage loans from plaintiff Foundation Capital Resources, Inc. ("Foundation") in order to build a church in Bridgeport, Connecticut. The Church stopped making its loan payments in 2009, and ever since the parties have been struggling to resolve their dispute. The question before me is whether a default judgment that the Court entered against the Church should be the end of that dispute, or whether the case should be reopened and proceed to a resolution on the merits. Because I now conclude that the Church's default was not willful, that the Church may possibly have a meritorious defense, and that any prejudice to Foundation is primarily the result of its own decision to withdraw its prior foreclosure action in state court, I will grant the Church's motion for relief from judgment under Rule 60(b) of the Federal Rules of Civil Procedure.

### BACKGROUND

Foundation originally filed this foreclosure action against the Church in Connecticut Superior Court on July 10, 2013. Doc. #65-1 at 6. Foundation alleged that it made a series of three loans to the Church totaling $8,148,000 between 2007 and 2009 to finance the construction

1

of a new church, secured by mortgages on several properties. Doc. #65-3 at 4–12. The Church defaulted on two of these loans in 2009, after which the parties entered into four separate forbearance agreements. The Church nonetheless failed to make its required payments. *See* Doc. #65-5 at 3.

The case was litigated in state court for more than three years, during which time Foundation ultimately filed two amended complaints, one on July 16, 2013, and one on September 8, 2016, and the Church filed answers to both amended complaints, each of which contained special defenses and counterclaims. On September 29, 2016, the Superior Court issued a ruling on Foundation's motion to strike the Church's special defenses and counterclaims, denying the motion to strike as to everything except one counterclaim. Doc. #65-5.

On November 18, 2016, just four days before the foreclosure action was set for trial, the parties reached a "Withdrawal and Tolling Agreement." Doc. #65-1 at 13–20. Under this agreement, both sides pledged to withdraw their respective claims without prejudice, in contemplation that those claims might be raised again in a "New Action." *Id*. at 14.

Foundation then filed this action here in federal court on January 30, 2017. Doc. #1. The Church filed an answer on February 22, 2017, Doc. #11, but Foundation moved to strike the answer on the ground that the answer had been signed and filed by the Church's pastor (Kenneth Moales) who was not an attorney authorized to represent a corporate party in court. Doc. #12. This motion was granted at a hearing before Magistrate Judge Fitzsimmons on March 30, 2017. *See* Doc. #24.

At the hearing before Judge Fitzsimmons, attorney Dennis Bradley appeared on behalf of the Church, having entered an appearance on the docket earlier that day, Doc. #22, and he made

an oral motion for a one-week extension of time until April 7, 2017, to file a responsive pleading. Judge Fitzsimmons granted this motion. Doc. #23, #24.

But the new deadline came and went without the Church filing an answer. On April 10, 2017, Foundation promptly moved for default entry pursuant to Fed. R. Civ. P. 55(a). Doc. #26. The Court granted this motion on April 27, 2017, and Foundation then moved for default judgment on May 15, 2017. Docs. #27, #28.

Three days later, another attorney—Andre Cayo—filed a motion for extension of time to plead until June 16, 2017. Doc. #33. Attorney Cayo filed this and subsequent motions without ever filing a notice of appearance in this action.[1] The motion claimed that Attorney Bradley had been "unable to get ahold of previous counsel . . . who represented the Defendant in the State court for the same matter which is being re-litigated in this court." *Id*. at 1. It also stated that Attorney Bradley had told Attorney Cayo that "he was unable to access his ECF account and had difficulties logging into the system to file papers." *Ibid*. The motion stated that "new counsel has just been retained by Attorney Dennis Bradley to assist in this complicated litigation," that Attorney Cayo met with the Church and "explained the urgency of filing appropriate pleading immediately; even if he was not retained." *Id*. at 1–2. Attorney Cayo then advanced several reasons why he had not been able to file a timely responsive pleading, including the Church's inability to fund the litigation and Attorney Cayo's lack of opportunity to review "the state court docket and papers, the evidence in possession of the Defendant and the discovery in possession of prior counsel 'Attorney Crumbie' in the State case." *Id*. at 2.

---

[1] On September 28, 2017, Attorney Cayo moved to withdraw from this action, claiming that "his appearance [had] entered automatically upon his filing of papers on behalf of the Defendant." Doc. #60 at 1. That was wrong. The Court's rules provide that "[a]ny counsel entering a case after the filing of the complaint, whether on behalf of a party or non-party, shall file with the Clerk and serve on all parties or their counsel a notice of appearance." D. Conn. L. Civ. R. 5(b).

Foundation opposed this motion for a number of reasons, Doc. #34, and the motion was denied on May 24, 2017. Doc. #35. The following day, Attorney Cayo filed an answer to the complaint. Doc. #36. Foundation moved to strike this answer, because the Church's default had already been entered, and therefore the Church was no longer in a position to file an answer. Doc. #37.

On July 13, 2017, the Church moved to set aside the entry of default. Doc. #45. This motion was filed by Attorney Cayo and included an affidavit from Attorney Bradley, claiming without elaboration that he had had a "dire and severe family medical issue" to deal with, that when he requested the one-week extension of time on March 30 he "did not expect my family member[']s condition to become severe," and that he "was forced to drop everything and come to their [sic] aid." Doc. #45-1 at 1. The motion also argued that the Church had a meritorious defense, as shown by the answer that Pastor Moales had filed on February 22, and that Foundation had violated Connecticut law requiring mediation in foreclosure cases. Doc. #45 at 1–2.

The Court granted Foundation's motion to strike on July 17, 2017, and it denied the Church's motion to set aside the entry of default on September 11, 2017, at the same time granting Foundation's motion for default judgment. Docs. #46, #52. Judgment entered on September 19, 2017, along with an order of strict foreclosure. Doc. #56.

On October 6, 2017, attorney John Williams filed a notice of appearance on the Church's behalf, along with a motion for relief from judgment under Rule 60(b), a motion for extension of time to file an appeal, and a motion to stay the execution of judgment. Docs. #65, #66, #67. The Court granted the motion for extension of time to file an appeal on October 17, 2017, Doc. #72, and at a motion hearing on October 27, 2017, the Court granted the Church's motion for stay of

4

execution of the judgment, and also of the Court's earlier order appointing Northeast Property Group, Inc. as receiver of rents insofar as that order contemplated dispossessing the church.

**DISCUSSION**

Rule 60(b) of the Federal Rules of Civil Procedure states in relevant part that "on motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason that justifies relief." Although a motion to vacate a default judgment is "addressed to the sound discretion of the district court," the Second Circuit has made clear that a "trial court's desire to move its calendar should not overcome its duty to do justice." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). There is a "strong preference for resolving disputes on the merits" rather than by means of technical default judgments. *Ibid.* Accordingly, "in ruling on a motion to vacate a default judgment, all doubts must be resolved in favor of the party seeking relief from the judgment in order to ensure that to the extent possible, disputes are resolved on their merits." *Ibid*.

When considering a motion to vacate a default judgment, the Court must consider three principal factors: "(1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice." *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013); *Green*, 420 F.3d at 108. I will address each factor in turn.

### *Willfulness*

As to the first of the three factors, the Second Circuit has observed that "willfulness in the context of a judgment by default requires something more than mere negligence, such as egregious or deliberate conduct, although the degree of negligence in precipitating a default is a

5

relevant factor to be considered." *Id*. at 108 (internal quotation marks omitted). Thus, in light of all the factors to be considered, courts may grant motions to vacate even if the default stemmed from "mere administrative or clerical error," as distinct from actions reflecting "a strategic decision to default. *Am. Alliance Ins. Co., Lt. v. Eagle Ins. Co.,* 92 F.3d 57, 61 (2d Cir. 1996) The Second Circuit has "see[n] no reason to expand [its] willfulness standard to include careless or negligent errors in the default judgment context," because "the basic purpose of default judgment is to protect parties from undue delay-harassment," and "abuses of process may be prevented by enforcing those defaults that arise from egregious or deliberate conduct." *Ibid.* (no willfulness shown when defendant's failure to answer the complaint was due to a filing mistake by an in-house counsel clerk).

If an attorney's conduct leading to default is willful, a separate question exists whether that willfulness of the attorney should be imputed to the client. "Normally, the conduct of an attorney is imputed to his client, for allowing a party to evade the consequences of the acts or omissions of his freely selected agent would be wholly inconsistent with our system of representative litigation." *S.E.C. v. McNulty*, 137 F.3d 732, 739 (2d Cir. 1998). This principle applies with less force if there is evidence of client diligence, *i.e.*, "efforts to determine that counsel was tending to the lawsuit" on the client's part. *Id*. at 739-40. This does not apply where a client has merely taken diligent steps to "reverse the consequences" of the lawyer's willful default, but will apply where a client has repeatedly inquired as to the status of the case and been told, dishonestly, by the lawyer that the matter was being handled properly. *See id*. at 740.

Here, the explanations given by Attorneys Bradley and Cayo for their ineptitude are far from convincing. It is suspicious to say the least that Attorney Bradley's family medical emergency was not mentioned in Attorney Cayo's initial motion for extension of time filed on

May 18, 2017, but only in his later motion to set aside entry of default on July 13, 2017. Meanwhile, the initial motion for extension of time claimed that Attorney Bradley could not access the ECF system, an excuse that vanished from view when it came time for Attorney Bradley to submit an affidavit in support of the later motion for extension of time. Attorney Cayo's slipshod filings and his failure even to file a notice of appearance does little to instill confidence in anything that he said or did. Both Attorney Bradley and Attorney Cayo acted erratically and irresponsibly in this action.

Nonetheless, I conclude that the Church's default in this case was not willful. It is clear that the default was not an intentional or strategic decision by the Church; after all, Pastor Moales attempted to file an answer to the complaint on February 22, 2017. The Church clearly sought to litigate this case on the merits. And Pastor Moales's affidavit filed in support of the Rule 60(b) motion does attest to efforts to verify that counsel was acting responsibly on the Church's behalf. Pastor Moales states that, after he retained Attorney Bradley (whom he knew through the Bridgeport School Board), he was "led to understand that [Bradley] would promptly file everything necessary to reactivate [defendant's] defenses and counterclaims." Doc. #65-1 at 2–3. He states that "without our knowledge, Attorney Bradley did nothing and we were defaulted." *Id*. at 3. Then "Attorney Bradley told us that Attorney Cayo was going to help us. He assured us that there had been an oversight in turning in paperwork but that Attorney Cayo would fix the problem." *Ibid*. The Church did not act willfully to cause a default judgment to enter.

### *Meritorious Defense*

As to the second factor, the Second Circuit has stated that "the existence of a meritorious defense is a key factor in the Rule 60(b) analysis . . . the absence of such a defense is sufficient to

support a district court's denial" of a motion to vacate a default judgment. *Green*, 420 F.3d at 109. "In order to make a sufficient showing of a meritorious defense . . . the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense." *Ibid*. A mere conclusory denial of a plaintiff's claims, or mere assertion of an affirmative defense, is not enough; instead, a "defendant must present more than conclusory denials when attempting to show the existence of a meritorious defense." *Id*. at 110.

Here, it is true that the Church has not yet introduced evidence on its behalf. Instead, the Church relies on the ruling by the Connecticut Superior Court that upheld the legal adequacy of its affirmative defenses and counterclaims as pleaded. In *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167 (2d Cir. 2001), the Second Circuit ruled on the basis of claims raised by the defendants in connection with a prior motion to dismiss that the defendants might have a meritorious defense that should forestall a default judgment. *Id.* at 173-74. The court of appeals relied on what the defendants had "argue[d]," and it held that "these claims, if proven at trial, would constitute a complete defense." *Id.* at 174.

Likewise, notwithstanding the lack of a formal evidentiary presentation to support a defense, I conclude that the Church has shown more than a conclusory basis for its defenses as detailed at length in the ruling of the Connecticut Superior Court. Accordingly, without deciding at this time that any of the Church's defenses will likely be successful, I conclude that the Church has done enough to show for present purposes that it may have a meritorious defense.

### *Prejudice*

As to the third factor, the Second Circuit has held that "some delay is inevitable when a motion to vacate a default judgment is granted; thus, delay alone is not sufficient basis for

establishing prejudice. Something more is needed. For example, delay may thwart plaintiff's recovery or remedy. It also may result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Green*, 420 F.3d at 110. In *Green* itself, the court of appeals held that granting relief would prejudice the government in an environmental case where the government provided unrebutted evidence that delay in remediation would have various deleterious environmental consequences. Other courts have held that prejudice is established if there is evidence that a defendant is "seeking to evade payment of its debt," such that "vacating the judgment . . . [would] provid[e] [the] Defendant further opportunities to hide its assets or otherwise evade payment of its debts." *FedEx TechConnect, Inc. v. OTI, Inc.*, 2013 WL 5405699, at *9 (S.D.N.Y. 2013).

Here, Foundation has argued that it would suffer much the same kind of prejudice as in *FedEx TechConnect*. It argues that "the debt . . . now exceeds $12 million dollars and the collateral securing the debt has a fair market value of only $5.9 million dollars resulting in a more than $6 million dollar deficiency to the Plaintiff without any hope of repayment. . . . [I]t is undisputed that the Defendant continues to collect millions of dollars in revenue each year from its operations and in rental income but has not made a mortgage payment in over four (4) years." Doc. #69 at 19–20. Foundation also states that "it is quite likely that Plaintiff's collateral will continue to depreciate over time thereby increasing the deficiency," and that "in the event that these proceedings are stayed, Defendant will continue to collect those monies [the rental income, etc.] and put them beyond the Plaintiff's reach." Doc. #70 at 11–12. For its part, the Church has offered no evidence to counter these allegations.

Still, however, much of the prejudice to Foundation is by its own choice to abandon its action before the Connecticut Superior Court on the eve of trial. Foundation's concerns about

delay ring somewhat hollow in light of its choice to pass up the opportunity for a trial in state court. When Foundation waited two more months before filing this action in federal court, it no doubt anticipated many more months of litigation as is customary for the exchange of pleadings and initial scheduling matters for a federal court action.

Moreover, any prejudice has been ameliorated by the Church's agreement—in light of the prior discovery conducted by the parties in the state court—that it will not seek any further discovery and is prepared at this time to advance to summary judgment. Notwithstanding the delay occasioned at the outset of this case by the Church's initial failure to retain counsel and the later antics of Attorney Bradley and Attorney Cayo, the fact is that Foundation is pretty much in the same position now as it reasonably would have expected to be when it filed this federal court case. Accordingly, I do not find that the element of prejudice weighs strongly in Foundation's favor.

In short, my consideration of these three factors points to granting the Church's motion for relief from the default judgment. First, the Church did not willfully default, notwithstanding the incompetence of its counsel. Second, the Church has made an adequate showing of a possibly meritorious defense. Lastly, Foundation has not sustained significant prejudice in light of its own choices and in light of the Church's position that it is prepared to advance to summary judgment.

## CONCLUSION

For the foregoing reasons, defendant's motion for relief from judgment under Rule 60(b) (Doc. #65) is GRANTED. The Church shall file its answer and any counterclaims by November 22, 2017. Any summary judgment motions shall be filed by December 20, 2017. Any response to any summary judgment motions shall be filed by January 22, 2018, and any reply to any

response shall be filed by February 5, 2018. The Court will schedule oral argument on any summary judgment motions, and it is unlikely to grant additional extensions of time.

It is so ordered.

Dated at New Haven this 8th day of November 2017.

/s/ *Jeffrey Alker Meyer*_____
Jeffrey Alker Meyer
United States District Judge

11