UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

FOUNDATION CAPITAL            :
RESOURCES, INC.              :
                             :
VS.                          :        NO. 3:17cv135(JAM)
                             :
PRAYER TABERNACLE            :
CHURCH OF LOVE, INC., ET AL.  :        NOVEMBER 22, 2017

**ANSWER, SPECIAL DEFENSES, AND COUNTERCLAIMS
OF DEFENDANT PRAYER TABERNACLE CHURCH OF LOVE, INC.**

**A N S W E R**

1.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

2.  Admitted.

3.  Admitted.

4.  Admitted.

5.  Admitted.

6.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

7.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

1

8.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

9.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

10.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

11.  Admitted.

12.  Admitted.

13.  Admitted.

14.  Admitted.

15.  Admitted.

16.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

17.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

18.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

19.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

20.  Admitted.

21.  Subparagraphs (a) through (o) are admitted.  In all other respects, Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

22.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

23.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

24.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

25.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

26.  Admitted.

27.  Admitted.

28.  Admitted.

29.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

30.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

31.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

3

32. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

33. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

34. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

35. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

36. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

37. Admitted.

38. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

39. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

40. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

41. Admitted.

42. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

43.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

44.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

45.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

46.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

47.  Admitted.

48.  Admitted.

49.  Admitted.

50.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

51.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

52.  Denied.

53.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

54.  Admitted.

55.  Defendant lacks sufficient knowledge or information to respond and

leaves the plaintiff to its proof.

56. Denied.

57. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

58. Denied.

59. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

60. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

61. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

62. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

63. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

64. Denied.

65. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

66. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

67.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

68.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

69.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

70.  Denied.

71.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

72.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

73.  Admitted.

74.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

75.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

76.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

77.  Denied.

78.  Defendant lacks sufficient knowledge or information to respond and

leaves the plaintiff to its proof.

79. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

80. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

81. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

82. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

83. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

84. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

85. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

86. Admitted.

87. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

88. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

89. Denied.

90. Denied.

91. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

92. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

93. Admitted.

94. Admitted.

95. Denied.

96. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

97. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

98. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

99. Admitted.

100. Denied.

101. Denied.

102. Denied.

103. Denied.

104. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

105. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

106. Denied.

107. Denied.

108. Denied.

109. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

110. Admitted.

111. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

112. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

113. Denied.

114. Denied.

115. Admitted.

116. Admitted.

117. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

118.  Admitted.

119.  Denied.

120.  Denied.

121.  Denied.

122.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

123.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

124.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

125.  Denied.

126.  Denied.

127.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

128.  Admitted.

129.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

130.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

131.  Denied.

132.  Denied.

133.  Admitted.

134.  Admitted.

135.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

136.  Admitted.

137.  Denied.

138.  Denied.

139.  Denied.

140.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

141.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

142.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

143.  Denied.

144.  Denied.

145.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

146.  Admitted.

147.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

148.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

149.  Denied.

150.  Denied.

151.  Admitted.

152.  Admitted.

153.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

154.  Admitted.

155.  Denied.

156.  Denied.

157.  Denied.

158.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

159.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

160.  Denied.

161.  Denied.

162.  Denied.

163.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

164.  Admitted.

165.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

166.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

167.  Denied.

168.  Denied.

169.  Admitted.

170.  Admitted.

171.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

172.  Admitted.

173.  Denied.

174.  Denied.

175.  Denied.

176.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

177.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

178.  Denied.

179.  Denied.

180.  Denied.

181.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

182.  Admitted.

183.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

184.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

185.  Denied.

186.  Denied.

187.  Admitted.

188.  Admitted.

189.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

190.  Admitted.

191.  Denied.

15

192.  Denied.

193.  Denied.

194.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

195.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

196.  Denied.

197.  Denied.

198.  Denied.

199.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

200.  Admitted.

201.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

202.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

203.  Denied.

204.  Denied.

205.  Admitted.

206.  Admitted.

207.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

208.  Admitted.

209.  Denied.

210.  Denied.

211.  Denied.

212.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

213.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

214.  Denied.

215.  Denied.

216.  Denied.

217.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

218.  Admitted.

219.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

220.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

221.  Denied.

222.  Denied.

223.  Admitted.

224.  Admitted.

225.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

226.  Admitted.

227.  Denied.

228.  Denied.

229.  Denied.

230.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

231.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

232.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

233.  Denied.

234.  Denied.

235.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

236.  Admitted.

237.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

238.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

239.  Denied.

240.  Denied.

241.  Admitted.

242.  Admitted.

243.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

244.  Admitted.

245.  Denied.

246.  Denied.

247.  Denied.

248.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

249.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

250.  Denied.

251.  Denied.

252.  Denied.

253.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

254.  Admitted.

255.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

256.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

257.  Denied.

258.  Denied.

259.  Admitted.

260.  Admitted.

261.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

262.  Admitted.

263.  Denied.

264.  Denied.

265.  Denied.

266.  Defendant lacks sufficient knowledge or information to respond and

leaves the plaintiff to its proof.

267. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

268. Denied.

269. Denied.

270. Denied.

271. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

272. Admitted.

273. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

274. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

275. Denied.

276. Denied.

277. Admitted.

278. Admitted.

279. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

280. Admitted.

281.  Denied.

282.  Denied.

283.  Denied.

284.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

285.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

286.  Denied.

287.  Denied.

288.  Denied.

289.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

290.  Admitted.

291.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

292.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

293.  Denied.

294.  Denied.

295.  Admitted.

296.  Admitted.

297.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

298.  Admitted.

299.  Denied.

300.  Denied.

301.  Denied.

302.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

303.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

304.  Denied.

305.  Denied.

306.  Denied.

307.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

308.  Admitted.

309.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

310.  Defendant lacks sufficient knowledge or information to respond and

leaves the plaintiff to its proof.

311.  Denied.

312.  Denied.

313.  Admitted.

314.  Admitted.

315.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

316.  Admitted.

317.  Denied.

318.  Denied.

319.  Denied.

320.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

321.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

322.  Denied.

323.  Denied.

324.  Denied.

325.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

326.  Admitted.

327.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

328.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

329.  Denied.

330.  Denied.

331.  Admitted.

332.  Admitted.

333.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

334.  Admitted.

335.  Denied.

336.  Denied.

337.  Denied.

338.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

339.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

340.  Denied.

341.  Denied.

342.  Denied.

343.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

344.  Admitted.

345.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

346.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

347.  Denied.

348.  Denied.

349.  Admitted.

350.  Admitted.

351.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

352.  Admitted.

353.  Denied.

354.  Denied.

355.  Denied.

356.  Defendant lacks sufficient knowledge or information to respond and

leaves the plaintiff to its proof.

357.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

358.  Denied.

359.  Denied.

360.  Denied.

361. Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

362.  Admitted.

363.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

364.  Defendant lacks sufficient knowledge or information to respond and leaves the plaintiff to its proof.

365.  Denied.

366.  Denied.

## S P E C I A L   D E F E N S E S

The defendant Prayer Tabernacle Church of Love, Inc., makes the following Special Defenses to each and every Count of the Amended Complaint:

**FIRST SPECIAL DEFENSE – Violation of C. G. S. §§ 33-920 and 33-921**

1.  The plaintiff is a Georgia corporation with offices in Springfield, Missouri.

2.  During the times relevant to this action, the plaintiff also has been known as, or done business as, AG Financial Solutions, a fictitious name.

3.  In the alternative, AG Financial Solutions is the alter ego and/or is wholly controlled by the plaintiff.

4.  The defendant is a not-for-profit religious institution organized and existing under the laws of the State of Connecticut, with an office and place of business in Bridgeport, Connecticut.

5.  During all times relevant to this action, the plaintiff purported to act as a mortgage lender to the defendant.

6.  The defendant proposed to build and own a new church structure, to be constructed at 729 Union Avenue in Bridgeport.  Plaintiff was to provide construction financing, construction oversight and, thereafter, permanent financing for the new church home.

7.  As early as January 2008, and continuing thereafter, employees, agents, apparent agents and/or representatives of plaintiff undertook to engage in activities well beyond those characterized by a bank/lender relationship which activities represent transacting business in Connecticut.

8.  Plaintiff's agents, apparent agents, employees and representatives took control, for a fee, of a campaign to solicit contributions from the defendant's parishioners.  In addition, plaintiff's agents, apparent agents, employees and representatives took control of the commercial construction activities related to the new church construction, including developing and publishing the Schedule of Values for the project and preparing the documents for and submitting the monthly payment requests related to the construction project.  Plaintiff through its agents, apparent agents, servants or employees took over constsruction management of the new church project and dealt directly with subcontractors. Plaintiff's agents, apparent agents, servants or employees purchased equipment and materials for the project work and involved themselves with payments to and claims of subcontractors and with Mechanic's lien waivers from subcontractors.

9.  In its dealings with the new church project, plaintiff transacted business in Connecticut.

10.  Plaintiff did not have and still does not have a certificate of authority from the Connecticut Secretary of State authorizing it to transact business in Connecticut.

11.  Plaintiff's aforesaid activities violated Section 33-920 of the Connecticut General Statutes.

12.  Pursuant to Section 33-291 of the Connecticut General Statutes,

29

plaintiff is prohibited from maintaining this suit without first obtaining a certificate of authority from the Secretary of State.

## SECOND SPECIAL DEFENSE – Fraud

1 - 6.  Paragraphs 1 through 6 of the First Special Defense are hereby made Paragraphs 1 through 6 of the Second Special Defense.

7.  The conduct of the plaintiff constituted a scheme to defraud the defendant whereby plaintiff preyet upon the defendant's religious beliefs and desires to do good works and benefit its community to entice defendant to enter into an initial loan agreement, which plaintiff knew would not be sufficient to complete construction of the proposed church, and then interfere with, delay and halt the project as a means to force defendant to obtain additional loans from plaintiff in order to complete the project.  In doing so, plaintiff intended to obtain additional loan origination fees from defendant for each successive loan, and also charge increasing rates of interest for the successive loans.

8.  Plaintiff's scheme also included persuading or requiring defendant to provide collateral for the loan, in the form of mortgages not only upon the property to be constructed but also upon multiple other properties owned by defendant, the value of which substantially exceeded the value of the loan. Plaintiff lent defendant money in quantities, at interest rates, and with terms and

conditions for adjustable rates, monthly payments, pre-payment penalties and late charges, which plaintiff knew, or reasonably should have known, defendant would not be able to meet resulting in default on the loan.

9.   Plaintiff's scheme also included significant pre-payment penalties on the loans whereby if there was any attempt to refinance the loans within the first 36 to 48 months of the loans with another lending institution at more favorable interest rates or terms, the plaintiff would assess a pre-payment penalty ranging from 1% to 4% of the principal balance.  Plaintiff's purpose in assessing such significant pre-payment penalties was to prevent and thwart the defendant from obtaining more favorable loan terms from another lender.

10.   Plaintiff's scheme also included the offering of multiple loans to the defendant at progressively unfavorable terms, and with each new set of loan documents or agreements regarding the payment of loans the plaintiff unfairly changed the order of the application of defendant's payments between the various loans and among the categories of charges within the loan.

11.   The purpose of the plaintiff's scheme was, therefore, to trap defendant in a cycle of excessive interest, late fees, pre-payment penalties and other charges that resulted in a maximization of these charges paid to the plaintiff and a minimization of payments attributable to the principal of the loan, which was designed ultimately to cause defendant to default on the loans.

12.   Defendant's default then would allow plaintiff to foreclose on multiple complete properties, whnich then could be resold to other buyers at a profit.

13.   Plaintiff holds itself out to the public and to loan applicants, and held itself out to defendant, as specializing in the financing of mortgages, construction loans and other financial instruments for Christian churches.

14.   Plaintiff advertised, and held itself out to the public and to loan applicants and to the defendant, as having a "different" purpose from other lenders, and expressly advertised, marketed, and stated to its prospective loan applicants that its mission was to "help build the Kingdom [of God] by providing mortgage financing to churches and ministries."

15.   Plaintiff advertised, and held itself out to the public and to loan applicants and to defendant, as having construction experts who would be on hand to provide free consultation with each loan to support in the planning, budgeting, design and construction process.

16.   Plaintiff advertised, and held itself out to the public and to loan applicants and to defendant, as providing fully amortized first-mortgage financing with flexible terms and "competitive rates" to help the loan applicant purchase facilities or refinance existing loans.

17.   Plaintiff advertised, and held itself out to the public and to loan applicants and to defendant, as providing construction loans that included

32

"interest-only payments during construction to ease cash flow" and that after construction "there is a guaranteed, no cost conversion to permanent financing at competitive rates."

18.  Plaintiff advertised, and held itself out to the public and to loan applicants and to defendant, that construction loans are handled by approving a total loan amount at closing, which allows the church to then borrow as much as is needed during the construction phase by requesting draws from the plaintiff's office.  Plaintiff advertised, and represented to the public and to loan applicants and to defendant, that at the end of each month the church would be billed only for the interest on the amount that it had drawn to date.

19.  As part of the negotiation and application for the loan, defendant emphasized the importance to it of finding a lender to fully finance the church construction project.  Plaintiff represented and promised that it understood the defendant's concerns, and represented and promised that it would provide loans sufficient to fully finance the project.

20.  Prior to December 12, 2007, the defendant provided to plaintiff an application for a construction loan in order to finance a new church building to be located at 729 Union Avenue, Bridgeport, Connecticut.  (Hereinafter the project will be referred to as the "Church Construction Project.")

21.  As part of the application, defendant p0rovided to plaintiff a Schedule

33

of Values reflecting the estimated costs of the Church Construction Project, which stated that the total estimated cost of the project was $7,789,1163.40, and that the unpaid amount of the project was $6,676,794.22.

22.  At the time of the application for the loan, the defendant already had mortgage and construction loan with another lender for the construction of the new church, which had a balance of approxdimately $1,212,412.00 at an interest rate of 7.625%.

23.  As part of the loan application, the defendant also requested refinancing of the prior mortgage, based upon the plaintiff's representation that it would offer competitive and lower rates of interest than its prior lender.

24.  On or about December 12, 2007, plaintiff and defendant entered into an agreement entitled "Adjustable Rate Secured Note," whereby plaintiff agreed to lend defendant up to $6,123,000.00 for the Church Construction Project, which sum included $1,212,412.00 to refinance the prior loan leaving only $4,910,558.00 for the construction loan.  Therefore, from inception of the loan the plaintiff knew or reasonably should have known that the loan was insufficient to fully finance the construction of the church.

25.  The 2007 Note provided that defendant would pay an "initial interest rate of eight and three-eights percent (8.375%) per annum.  Upon conversion to permanent financing, Borrower will pay interest at the rate of eight and three

eights percent (8.375%) per annum."

26.  The 2007 Note provided that payments by defendant would be applied first to late fees, then to interest and then to the principal of the loan.

27.  The 2007 Note also required as an additional term that defendant "maintain a One Million Dollar ($1,000,000.00) Key Man life insurance policy on Kenneth Moales, Sr." and that plaintiff be the primary beneficiary on the policy.

28.  The 2007 Note provided multiple mechanisms under which interest might vary but that "at no time will the interest rate on this Note be less than eight and three eights percent (8.375%) per annum except as otherwise be agreed to in writing."

29.  The 2007 Note also provided for late payments equal to 10% of the amount of a monthly payment.

30.  The 2007 Note also provided for an increase in interest in the event that the plaintiff determined that the defendant was in default, pursuant to which an additional 5% interest would be assessed.

31.  The 2007 Note also provided that if defendand made a "full prepayment of the Note with Borrowed Funds," *i.e.* if defendant refinanced with another lender, within the first 48 months of the loan, then defendant would incur a pre-payment penalty ranging from 1% to 4%, depending upon the timing of the refinance.

32.   Simultaneous with the Adjustable Rate Secured Note, the plaintiff and the defendant also entered into a "Construction Loan Agreement" with effective date of December 12, 2007, which defined the terms and conditions and methods for distribution of funds to be used in the Church Construction Project.

33.   The Construction Loan Agreement included a provision that named plaintiff as defendant's "true and lawful attorney-in-fact with full power of substitution to complete the construction of the Improvements in the name of Borrower [defendant.]"

34.   The Construction Loan Agreement also provided plaintiff with authority to make additions, changes, and corrections to the plans and specifications of Church Construction Project, and to disburse funds toward the completion of the Church Construction Project, and to charge such funds against the defendant, without requiring the permission, agreement, approval or consent of the defendant to the additions, changes, corrections or charges.

35.   The Construction Loan Agreement also allowed plaintiff to employ contractors, subcontractors, agents, architects, and inspectors in order to complete the Church Construction Project, and to pay, settle or compromise all existing or future bills and claims related to the Church Construction Project.

36.   As such, the terms of the Construction Loan Agreement allowed the Plaintiff to increase the defendant's indebtedness without its knowledge,

permission, agreement, approval or consent.

    37.  At the time of the 2007 loan, plaintiff knew or reasonably should have known that the amount loaned was insufficient to cover the full costs of the Church Construction Project, which could result in delay or stalling of the Church Construction Project due to insufficient funds, which pursuant to the terms of the 2007 loan would be considered a default.

    38.  However, plaintiff nonetheless encouraged the defendant to continue the Church Construction Project and repeatedly p[romised the defendant that it would provide all funds necessary to complete the Church Construction Projectg via a second loan.

    39.  As part of the 2007 loan, plaintiff and defendant also entered into an "Open Ended Mortgage, Assignment of Lease and Rents and Security Agreement," dated December 12, 2007.

    40.  This document provided plaintiff with a mortgage not only upon the church property under construction at 729 Union Avenue, Bridgeport, Connecticut, but also upon multiple other parcels of land as collateral.

    41.  The value of these parcels of land likely exceeded the value of the loan.

    42.  The 8.375% interest was above market rates prevailing at the time of the loan, and was also above the rate that defendant was paying on its prior

mortgage and construction loan but plaintiff promised the defendant that the 8.374% rate would prevail only during construction, which was expected to be completed by June 15, 2009, and that upon completion the loan would be converted to a traditional mortgage with a lower interest rate.

43.  Plaintiff repeatedly promised defendant that plain tiff's concern was to assist the defendant in building its church for the greater glory of God, and that it would, in fact, provide loans fully covering the completion of the construction project at competitive rates that were guaranteed to be rolled into a permanent mortgage upon completion of the poroject, at a lower, more affordable interest rate.

44.  Additionally, the plaintiff represented and promised that as part of its construction loan and financing package it would assign its agent, apparent agent, employee and/or representative, Johnny Baker, whom it represented was its Vice President of Construction, to provide oversignt of the construction project and to monitor the construction management company, contractors and subcontractors to ensure that construction was carried out timely, efficiently, in a workmanlike manner and on budget.

45.  Plaintiff promised and represented that Mr. Baker would make routing on-site visits, that he would review and approve the schedule of values for payment withdrawals, and that he would prevent shoddy construction, excessive

change orders and delays.

46.  At various points throughout the life of the 2007 loan, the plaintiff charged defendant interest at a rate of 13.375% per year or higher, as well as substantial fees including improperly assessed "pre-payment" fees.

47.  As a requirement of the 2007 loan, plaintiff required that defendant participate in a campaign to raise funds for the Church Construction Project. Plaintiff referred to the capital campaign as the MasterPlan Services Plan, and referred to its method of fundraising as "Faith Raising."

48.  The plaintiff charged the defendant an excessive fee of approximately $78,000.00 to participate in the capital campaign and for the plaintiff's services in orchestrating and leading the campaign.  This fee was folded into the principal of the 2007 loan.

49.  The plaintiff represented to defendant that it considered the "Faith Raising" fundraising campaign necessary in order to ensure that the defendant would be able to pay the 2007 loan and any subsequent loans.

50.  The plaintiff promised defendant that the second loan to complete the Church Construction Project would be in an amount equivalent to 80% to 100% of the amount pledged to the capital campaign.

51.  The capital campaign commenced after the 2007 loan documents went into effect and continued through at least November 2008.

52.  Plaintiff orchestrated, organized and controlled the capital campaign by and through its agents, apparent agents, employees or representatives. Plaintiff instructed defendant to change its previous fundraising approach, and instead embrace its "Faith Raising" approach.  Plaintiff's actions included, but were not limited to, setting the schedule and calendar of events for the capital campaign, providing defendant with written materials to follow in the implementation of the campaign, designing the written materials for the campaign that were provided to defendant's parishioners, attending and leading meetings wherein plaintiff's agents, apparent agents, servants or employees instructed the defendant in how to carry out the capital campaign, and attending church services of the defendant and delivering sermons or speeches to defendant's parishioners that encouraged them to pledge to the campaign.

53.  Pledges amounting to $3,768,964.00 were ultimately received by the campaign.

54.  On or about September 17, 2008, while plaintiff was processing defendant's application for the second loan that was needed to complete the Church Construction Project, defendant informed plaintiff that an additional $2,317,117.81 was required to complete the Church Construction Project.

55.  Plaintiff's promise to lend at least eighty percent of the pledge amount indicated that plaintiff should have loaned defendant at least $3,015,712.00,

which would have been sufficient to timely complete the Church Construction

Project and obtain a permanent certificate of occupancy.

56.  However, plaintiff refused to lend defendant sufficient funds to

complete the Church Construction Project, and instead agreed to lend defendant

only $1,175,000.00 as the principal of the 2008 loan.

57.  In addtion, prior to issuing the loan plaintiff had promised to

defendant that the interest rate on the 2008 loan would not exceed 6.5% and

that the interest rate would float at between as low as 4.5% and not exceed

6.5%.

58.  Notwithstanding plaintiff's prior representation, the 2008 loan

documents contained an interest rate of 10.5% per annum.

59.  The 2008 loan provided that payments would be applied first to late

fees, then interest and then the principal of the loan.

60.  The 2008 loan also included a pre-payment penalty whereby if

defendant paid the loan with "borrowed funds," meaning if it attempted to

refinance the loan within the first 36 months of the loan, that the plaintiff would

assess a penalty of between 1% and 3% of the principal balance.

61.  Plaintiff also charged defendant an excessive loan origination fee of

$23,500 in order to transact the 2008 loan.

62.  Plaintiff once again represented and promised to defendant that it

41

would provide all funds necessary to complete the Church Construction Project, and that upon completion of construction it would convert both the 2007 loan and the 2008 loan to permanent financing with a lower interest rate.

63.  Additionally, plaintiff promised that the high interest rate and required closing fees would be waived and/or credited back to defendant at the time of completion of the Church Construction Project, when plaintiff refinanced the construction loan with a traditional mortgage.

64.  In order to attempt to complete the Church Construction Project, defendant had no choice but to accept plaintiff's inadequate loan terms, excessive loan origination fee and excessive interest rate.

65.  As plaintiff knew or reasonably should have known, the 2008 loan was insufficient to complete the Church Construction Project.

66.  By March 2009, the Church Construction Project still was incomplete and defendant had fallen behind on its payments on the 2007 loan.

67.  Plaintiff improperly assessed an exorbitant late payment and/or default penalty, which plaintiff called a "prepayment penalty," against defendant in the amount of $183,244.88.

68.  The "prepayment penalty" was in addition to late fees that plaintiff charged in excess of $21,000.

69.  The amount of the "prepayment penalty" was far in excess of the total

42

arrearage and late fees owed on the mortgage at the time.

70.  In March 2009, the plaintiff and defendant entered into a "Forbearance and Settlement Agreement" with effective date of March 26, 2009.

71.  The March 2009 Forbearance Agreement required that the "prepayment penalty" be added to the arrearage of the mortgage, and as such it more than doubled the amount of the arrearage as it existed in March 2009.

72.  The March 2009 Forbearance Agreement required that the plaintiff make weekly payments in the amount of $15,000 for 23 weeks in order to pay the claimed arrearage.  These weekly payments were in addition to the other monthly payments of over $25,000 that were owing on the 2008 loan.

73.  At the time of this March 2009 Forbearance Agreement, plaintiff again represented and promised the defendant that its purpose was to help the defendant achieve its goal of building a new church home, and promised that the plaintiff and its agents, servants and employees were "men of God," and that plaintiff would be understanding and cooperative and continue to work with defendant in the event that defendant was unable to raise the funds weekly, and that plaintiff would act to ensure that defendant was financially stable.

74.  In approximately March 2009, plaintiff exercised its authority pursuant to the 2007 Construction Loan Agreement to fully take over management of the Church Construction Project, and required that plaintiff terminate the relationship

with its prior construction management company.

75.  At that time, some or all of the contractors, subcontractors and vendors had ceased work on the church construction project due to lack of payment, and several contractors and subcontractors had placed liens, or threatened to place liens, upon the church property.

76.  Despite the fact that plaintiff's agents, apparent agents, servants or employees, including Johnny Baker, had previously failed to adequately monitor and supervise the church construction project, the plaintiff assigned Mr. Baker to act as the construction manager for the project.

77.  Plaintiff assured defendant that its takeover of the construction was necessary to complete the church construction project, minimize budget overruns, and obtain a permanent certificate of occupancy for the building. Plaintiff also assured defendant that further construction costs would not exceed $850,000.0

78.  Plaintiff represented and promised to defendant that it would ensure swift completion of the Church Construction Project and would secure a permanent certificate of occupancy for the property without further budget overruns.

79.  Plaintiff represented and promised to defendant that it would conduct an audit or accounting of all construction work that had been completed thus far

44

and would review all of the invoices and debts owed in relation to the Church Construction Project, and obtain lien waivers and/or releases for all of the liens that already had been placed on the building before allowing any of the contractors or subcontractors to resume work, or entering into any new agreements with contractors, subcontractors or vendors.

80.  Plaintiff represented and promised to defendant that it would negotiate settlements of all bills and invoices owed to contractors, subcontractors and vendors on the Church Construction Project for work that already had been completed.

81.  Plaintiff represented and promised to defendant that the settlements it negotiated with the contractors, subcontractors and vendors for work that already had been performed would be at significantly reduced amounts from what had been invoiced by the contractors, subcontractors and vendors in order to allow the defendant to afford to complete the Church Construction Project.

82.  Plaintiff represented and promised to defendant that it would pay the contractors, subcontractors and vendors directly and that the funds paid would constitute a third loan to defendant.

83.  Plaintiff represented and promised to defendant that it would obtain final mechanics lien waivers from all contractors, subcontractors and vendors with whom it reached settlements.

45

84.  Plaintiff represented and promised defendant that it would ensure that all work was completed on the Church Construction Project in a timely manner and that it would obtain a permanent certificate of occupancy for the new church building.

85.  By June 2009, the Church Construction Project still was not complete and defendant had again fallen behind on payments of the 2008 loan the payments required by the 2009 March Forbearance and Settlement Agreement.

86.  Plaintiff and defendant entered into a "Settlement Agreement," effective June 5, 2009, regarding a claimed arrearage on the 2008 loan.

87.  Pursuant to those terms, plaintiff increased defendant's interest rate on the 2008 loan to 13.375%, and provided for various payments to make up the arrearage.

88.  At the same time, plaintiff and defendant also entered into an "Addendum to Forbearance and Settlement Agreement," effective June 5, 2009, related to the "Forbearance and Settlement Agreement" that had been executed in March 1009 (hereinafter referred to as "Addendum").

89.  The Addendum provided that the interest rate on the 2007 loan would also increase to 13.375%, and set an established schedule for making up the claimed arrearages.

90.  During the course of the Forbearance Agreement, plaintiff received

and accepted but failed to apply, or applied incorrectly, one or more of defendant's payments.

91.  By September 2009, plaintiff had not completed its audit of the Church Construction Project and the Church Construction Project still was not complete.

92.  Additionally, by that time several of the contractors and subcontractors on the construction project had ceased work due to failure to be paid.  Additionally, due to plaintiff's failure to properly manage and timely authorize construction payments, several contractors had begun assessing late payments against defendant, and dthreatened foreclosure of mechanics liens and other legal actions due to failure to be paid.

93.  Plaintiff and defendant entered into the 2009 loan, whereby plaintiff agreed to loan defendant up to $850,000 in additional funds for the purpose of completeing the Church Construction Project.

94.  The loan documents for the 2009 loan included a document entitled "Adjustable Rate Secured Note," with effective date of September 14, 2009, which provided for a principal of up to $850,000 abd ab ubterest rate if 11,5% per annum.

95.  The 2009 Note provided that defendant would continue to make payments as agreed in the Forbearance Agreements and provided for additional

lump sum payments, and that all payments would be applied "first to the interest due on the current First Loan [2007 loan], and then the interest due on the Second Loan [2008 loan] and the remaining amount shall be applied to the principal and interest due on this loan."

96.  The 2009 Note also expressly provided: "Borrower [defendant church] agrees that all draws are subject to the monitoring and oversignt of AG Financial Construction Services."

97.  By November 2009, the church construction project still sas not completed, and a certificate of occupancy had not been obtained.  By that time, defendant again had fallen behind on its loan payments.

98.  On or about November 20, 2009, plaintiff and defendant entered into a "Forbearance and Settlement Agreement" regarding the 2007 loan, 2008 loan and 2009 loan, with effective dage October 30, 2009.

99.  The November 20, 2009, Forbearance and Settlement Agreement included an improper assessment of a "pre-payment penalty" against defendant in relation to the 2007 loan in the amount of $183,244.88, thus improperly purporting to increase the defendant's total indebtedness on the 2007 loan.

100.  The November 2009 Forbearance and Settlement Agreement included an improper assessment of a "pre-payment penalty" against defendant in relation to the 2008 loan in the amount of $33,119.18, thus improperly

purporting to increase the defendant's total indebtedness on the 2008 loan.

101.  The November 2009 Forbearance and Settlement Agreement provided that interest on the loans would revert to 8.375% on the 2007 loan, 10.5% on the 2008 loan, and 11.5 % on the 2009 loan.

102.  The November 2009 Forbearance and Settlement Agreement provided that payments would be applied first to the "interest only of the First Note [2007 note], interest only of the Second Note [2008 note], and the balance applied to the amortization of the Third Note [2009 loan]."

103.  The November 2009 Forbearance and Settlement Agreement provided that upon payment in full of the 2009 loan, the payments then would be applied first "to the interest only of the First Note [2007 loan] and the balance applied to the amortization of the Second Note [2008 loan].

104.  The November 2009 Forbearance Agreement required that all payments be deposited in a "30-day demand account with AG Financial Solutions."

105.  The November 2009 Forbearance and Settlement Agreement provided: "The proceeds from the Third Note [the 2009 loan] will be used to make final payments to the contractors for the completion of the building and to settle outstanding invoices owed to the contractors.  All funds will be disbursed directly to the contractors by the Lender [plaintiff] in exchange for the necessary

49

final lien waivers."

106.  Plaintiff, however, did not perform upon its promises and failed to properly manage the construction project.

107.  Although plaintiff represented to defendant that it had negotiated with all of its contractors, subcontractors and vendors to obtain settlements of accounts receivable and lien waivers, the plaintiff did not in fact do so.

108.  Approximately thirteen (13) liens or other encumbrances were placed upon the property by the contractors, subcontractors and vendors.

109.  Plaintiff failed to obtain written settlement documents and/or lien waivers from several of the contractors, subcontractors and vendors for payments that were made to the contractors and subcontractors.

110.  Additionally, plaintiff made false representations to defendant regarding the settlement or negotiation of the outstanding accounts of the contractors and subcontractors.  While plaintiff informed ddefendant that all payments to contractors and subcontractors were negotiated as final payments and that lien waivers were obtained, the plaintiff told several of the contractors and subcontractors that payments made to them by plaintiff did not constitute final payments and that the contractors and subcontractors could seek additional payments directly from the defendant.

111.  During the period of time in which it was managing the Church

Construction Project, the plaintiff authorized change orders and other costs or fees with contractors, subcontractors and vendors, purchased additional supplies and materials, and generally took actions that unnecessarily increased the costs of the Church Construction Project without the knowledge, consent or permissoin of the defendant.

112.  The change orders, late fees, re-deployment fees, surcharges, material storage fees, and other unnecessary fees and costs incurred as a result of the plaintiff's authorizations and other actions totaled over $1,700,000.  These costs were incurred and charged to the defendant without the knowledge, consent, permission or authorization of the defendant.

113.  Plaintiff charged amounts to the 2009 loan as principal in excess of $850,000, which plaintiff claimed it had expended to pay contractors, subcontractors and vendors for completion of the Church Construction Project.

114.  Despite multiple requests from the defendant and the defendant's legal counsel, the plaintiff failed to provide the defendant with proof that it actually paid any sums to the contractors, subcontractors or vendors in the amounts that plaintiff claims.

115.  Plaintiff has repeatedly ignored and failed to comply with defendant's request for an accounting of the funds, which the plaintiff claims make up the principal of the 2009 loan.  The plaintiff never has provided

51

defendant with an accounting of the funds it claims to have lent in the 2009 loan, or with a detailed accounting of the three loans that includes a reflection of interest charges made and accrued.

116.  Plaintiff through its construction manager made intermittent efforts and work upon the Church Construction Project through approximately March 2011 but eventually abandoned the project, failing to ensure completion of the construction, failing to obtain waivers of mechanics liens or other legal settlement documents from all of the vendors, contractors and subcontractors, and failing to obtain a permanent certificate of occupancy for the church despite multiple requests from the defendant that the plaintiff complete the construction as promised.

117.  By September 20, 2010, despite plaintiff's promises to timely complete the Church Construction Project, the project still was not complete.

118.  On September 20, 2010, the senior pastor and founder of the defendant, Bishop Kenneth Moales, Sr., died.

119.  As a result of Bishop Moales' death, plaintiff sought provisions of the Key Man life insurance policy that had been required by the 2007 loan documents.

120.  At that time, however, it was determined that due to a paper processing error, Bishop Moales' policy did not list plaintiff as beneficiary and

instead provided for $1,000,000 in benefits to the defendant and $2,500,000 in benefits to Bishop Moales' widow.

121.  After the death of his father, Pastor Kenneth Moales, Jr., took over the ministry of the defendant and in seeking to comply with the terms of the 2007 loan, offered plaintiff $1,000,000 from the insurance policy of which the defendant was the beneficiary.

122.  Plaintiff, however, rejected this offer and instead demanded the full $3,500,000 of life insurance.  Plaintiff held the church construction project hostage, and refused to take any action on the defendant's debts or loans or to complete construction of the church, as had previously been promised, unless defendant paid $3,500,000 to plaintiff although such payment was not required by any agreement between the parties.

123.  Plaintiff's refusal to take action unless paid in excess of the amount that was contractually owed on the life insurance policy caused the defendant to suffer additional delay in construction and incur additional costs from its construction contractors, including late fees on payments, as well as unnecessary additional interest and late fees on its loans owed to plaintiff.

124.  On or about April 29, 2011, the parties reached an agreement regarding disbursal of the insurance proceeds, whereby $1,700,000 was distributed to plaintiff, which was an amount in excess of what was contractually

owed to the plaintiff.

125.  Pursuant to the terms of the November 2009 Forbearance Agreements, which were effective at the time, the $1,700,000 should have been sufficient to have completely paid off outstanding late charges and interest on the 2007, 2008 and 2009 loans (if any was, in fact, owed), and to pay the entire (or nearly entire) principal owing on the 2009 loan (if any was, in fact, owed), with any remaining balance being applied to the principal of the 2008 loan and 2007 loan respectively.

126.  However, plaintiff improperly applied the $1,700,000 payment by allocating the payment among the three loans in such a manner as to prevent the principal of the 2009 loan from being paid and resulting in a continued accrual of a high rate of interest on the 2009 loan balance, as well as accrual of higher interest on the remaining loan balances, as well as any "late fees" or other charges that the plaintiff may have assessed since that time.

127.  On or about March 27, 2012, the defendant and the plaintiff entered into three agreements to modify the terms of the 2007, 2008 and 2009 mortgages and notes.  (Hereinafter these agreements are referred to as the "2012 Mortgage Modifications".)  The 2012 Mortgage Modifications provided that the interest on the 2007 loan, the 2008 loan, and the 2009 loan would each be reduced to 6.25% per annum.

128.  The 2012 Mortgage Modifications provided that all future payments would be applied first to the 2009 loan, then to the 2008 loan, and then to the 2007 loan.  If payments were properly applied under the terms of these agreements, then the defendant's payments would have been applied first to the loan with the highest interest rate, and having a portion of the payment go toward the principal of the loan, allowing the loan to eventually be paid in full.

129.  Upon information and belief, after execution of the 2012 Mortgage Modifications, the plaintiff has charged the defendant rates of interest in excess of the rate agreed upon in the 2012 Mortgage Modifications.

130.  The defendant continued to make payments after the 2012 Mortgage Modification agreements but upon information and belief, the plaintiff failed to properly apply the payments in the order as specified by the 2012 Mortgage Modification agreements and instead applied the payments against "late fees," "interest" and charges in such a manner as to continue to maximize payments of "late fee," "interest" and other charges, and failing to apply any of the payments toward the principal of the loans as agreed.

131.  Throughout the negotiation of the multiple loans, the defendant repeatedly protested and questioned the loan documents, which routinely contained loan terms and conditions that were less favorable than those that had been promised by agents, apparent agents, servants, employees and/or

representatives of the plaintiff during the negotiation process.

132.  On each occasion that the defendant protested, the plaintiff promised and assured the defendant that the plaintiff was composed of men and women who could be trusted and that they had good Christian intentions to assist the defendant.  On each occasion, the plaintiff promised and assured the defendant either: (1) that the language in the loan documents was "just for the lawyers" or "just for the FDIC," and stated that the terms and conditions that would actually prevail would be more favorable than those incorporated into the docuements; or (2) that the terms of the loan documents were temporary, and that the agreements would be revised upon completion of construction to provide for more favorable terms.  However, the plaintiff failed to abide by the more favorable verbal terms that were promised to the defendant.

133.  Additionally, upon information and belief, at various times throughout the course of the multiple loans, the plaintiff failed to appropriately apply the defendant's payments and/or failed to timely apply the defendants' payment resulting in improper charges for late fees and excessive accrual of interest.

134.  The defendant has paid the plaintiff in excess of three million dollars ($3,000,000.00) in payments since the inception of the loans.

135.  Upon information and belief, the plaintiff has not applied any of

those payments to the principal of the loan.

136.  The relationship of plaintiff and defendant was a fiduciary relationship.

137.  The foregoing actions of the plaintiff constitute a fraud upon the defendant.


**THIRD SPECIAL DEFENSE: Unconscionability**

1 - 137.  Paragraphs 1 through 137 of the Second Special Defense are hereby made Paragraphs 1 through 137 of the Third Special Defense.

138.  Plaintiff is a sophisticated lender, engaged with financing church construction in many states and communities.

139.  The Construction Loan Agreement entered into on December 12, 2007, by the plaintiff and defendant contained multiple unconscionable provisions, including but not limited to granting plaintiff an irrevocable power of attorney over the defendant's construction project, including but not limited to permitting the plaintiff to: declare a default if plaintiff, by its own judgment, determined construction could be completed on or before the Completion Date under the Agreement, take over construction after default and incur additional construction debts to be attributed to defendant, and to make changes to the Plans and Specifications of constrsuction improvements, all without the

57

defendant's permission or consent; unconscionable pre-payment penalty

provisions; unconscionable default provisions that allowed the plaintiff to assess

late charges, increased default interest and a "prepayment penalty" in the event

of default by the defendant.

140.  Additionally, the interest rate on the "Bridge Note" entered into on

December 19, 2008, by the plaintiff and defendant contains an interest rate of

10.50%, with an additional 10% late charge, as well as a 5% default interest rate

increase, as well as a prepayment penalty ranging from 1%-4%, which included

charging the "prepayment penalty" in the event of acceleration of the note, in

addition to other late fees, interest charges, and legal fees, unconscionable

terms unrelated to those promised to the defendant.

141.  Furthermore, the March 2009 Forbearance and Settlement

Agreement was unconscionable in that it incorporated within an unconscionable,

unethical, exorbitant and improperly assessed "prepayment penalty" on the 2007

loan in the amount of $183,244.88, over and above the $20,000 in late fees that

had already been assessed on the loan, thus resulting in the mortgage arrearage

more than doubling.

142.  Furthermore, the Addendum to Forbearance and Settlement

Agreement entered into on June 9, 2009, by the plaintiff and defendant, agreeing

to an interest rate of 13.375% on the 2007 and 2008 loans, and requiring weekly

payments in the amount of $15,000, constitute terms so excessively burdensome on the defendant as to be unconscionable.  Additionally, this Forbearance Agreement incorporated the improperly assessed "pre-payment penalty" referenced in the paragraphs above.

143.  Furthermore, the 2009 loan also contained unconscionable provisions, including but not limited to a rate of interest of 11.5%.

144.  Furthermore, the November 2009 Forbearance and Settlement Agreement was unconscionable in that it incorporated significant unethical, unconscionable, excessive, unwarranted and improperly assessed "pre-payment" penalties in the amount of $183,244.88 on the 2007 loan, and $33,119.18 on the 2008 loan, as well as excessive and unconscionable weekly payment schedules.  Additionally, the payment continued to be applied in such a manner as to prevent payment from reaching the principals on the loan.

145.  Plaintiff's actions and activities, including taking over the construction management of the new church project, interfering with the relationships and contracts as between defendant and its subcontractors, making the loans pursuant to unconscionable terms unrelated to those promised to the defendant, modifying the loans so as to impose grossly excessive interest rates, and refusing to honor its agreements to reduce the interest rates amount to oppressive, unconscionable business practices to the actual, demonstrable

detriment of defendant.

146.  Foreclosure is an equitable proceeding.  Plaintiff's conduct and

actions occurring after the execution of the loan documents afford defendant a

recognized defense to the foreclosure sought.


**FOURTH SPECIAL DEFENSE: Unclean Hands**

1 - 137.  Paragraphs 1 through 137 of the Second Special Defense are

hereby made Paragraphs 1 through 137 of the Fourth Special Defense.

138.  Plaintiff seeking mortgage foreclosure is obliged in its dealings with

defendant to do equity.

139.  During the lending process, the plaintiff knowingly made

misrepresentations informing defendant that interest rates and other terms of the

loans would be more favorable than the interest rates and conditions that were

ultimately contained in the loan documents.

140.  During the lending process, the plaintiff knowingly made false

representations that the interest rates and other terms of the loan that would

actually prevail would be more favorable to defendant than the loan interest and

terms that were actually contained within the loan documents.

141.  Plaintiff knowingly entered into loan agreements and modifications

with defendant that contained unconscionable provisions including excessively

high interest rates and late fees and the granting to the plaintiff of an irrevocable Power of Attorney concerning defendant's building project.

142. Furthermore, plaintiff assumed control of the defendant's building project through its employees and agents and accumulated excessive and unreasonable construction debts in the defendant's name.

143. Plaintiff's conduct during the lending process, after execution of the loan documents, and through much of its lender-bank and obligor-church relationship with defendant evidences failure to act equitably.

144. Plaintiff's conduct is of such a character as to be condemned and pronounced wrongful by honest and fair-minded people.

145. Plaintiff in its dealings with defendant has been guilty of having unclean hands which doctrine the court should apply in this matter.


## D E F E N D A N T ' S   C O U N T E R C L A I M S

The defendant, Prayer Tabernacle Church of Love, Inc., hereby asserts the following counterclaims against the plaintiff, Foundation Cap;ital Resources, Inc.:

### COUNT ONE: Breach of Implied Duty of Good Faith and Fair Dealing

1 - 137. Paragraphs 1 through 137 of the Second Special Defense are hereby made Paragrahs 1 through 137 of Count One of the Counterclaim.

138.  Plaintiff's actions and conduct in the course of its dealings with defendant constitute a breach of the implied duty of good faith and fair dealing.

139.  As a result, the defendant has been required to take over management of the construction itself, and has incurred additional costs to move toward completion of the project.

140.  As a further result, the defendant has been unable to secure a permanent certificate of occupancy for the church.

141.  As a further result, the defendant incurred late fees, surcharges, interest charges, unnecessary material storage charges and re-deployment charges from its vendors, contractors and subcontractors due to the plaintiff's failure to fulfill its obligations of construction supervision, management and monitoring, and to make timely and complete payments as promised, and thus unnecessarily increasing the costs of construction.

142.  As a further result, the defendant has had multiple claims and lawsuits brought against it by contractors, subcontractors and vendors, who claimed that they had not been fully paid for their goods and services wshen plaintiff had represented to defendant that the contractors had indeed been paid. The defendant has been required to incur additional costs, including but not limited to substantial legal fees and investigatory fees to defend and settle these claims.

143.  As a further result, the defendant has been required to incur substantial legal fees, including the costs of bringing litigation, to obtain discharge of mechanics liens and other liens against the church property.

144.  As a further result, the defendant's Church Construction Project was not completed in a timely manner, and the defendant has been unable to secure a permanent certificate of occupancy, which has caused the defendant to lose eligibility for federal grants and state funding for its early childhood education program, resulting in a loss of revenue to the defendant.

145.  As a further result, defendant suffered money damages including but not limited to excessive and improperly assessed late fees and excessive and improperly assessed interest charges, assessed by the plaintiff.

146.  As a further result, the defendant has suffered the loss of use of funds that it has overpaid to the plaintiff by virtue of the plaintiff's overcharging of late fees, "pre-payment penalties," interest and improper application of payments.

147.  As a further result, the defendant has suffered the loss of use of funds that it has overpaid to the plaintiff by virtue of the plaintiff's overcharging of interest and failing to apply funds properly, resulting in an improper inflation of the indebtedness of the defendant.

## COUNT TWO: Breach of Contract - 2007 Loan Agreements

1 - 137.  Paragraphs 1 through 137 of Count One are hereby made Paragraphs 1 through 137 of Count Two.

138.  The plaintiff breached its obligatoins under the 2007 Loan Agreements with the defendant to provide construction management services and to properly assess interest, other charges, and to apply payments in one or more of the following ways:

      a.     It failed to timely, properly, competently and effectively supervise the construction of the church;

      b.     It failed to timely, properly competently and effectively manage contractors, subcontractors and vendors on the church construction project to ensure that all work was performed in a workmanlike manner;

      c.     It failed to timely, properly, competently and effectively manage contractors, subcontractors and vendors on the church construction project to ensure that all work was performed in a timely manner;

      d.     It failed to fimely, properly, competently and effectively manage contractors, subcontractors and vendors on the church construction project to ensure that all work was

64

performed within budget;

e.      It failed to timely, properly and effectively negotiate payments to contractors, subcontractors and vendors to ensure that costs remained within budget;

f.      It failed to timely and fully pay contractors, subcontractors and vendors;

g.      It failed to negotiate with the contractors, subcontractors and vendors for payment for their services on the defendant's behalf;

h.      It failed to timely and properly obtain waivers of liens and/or settlements for payments that were made to contractors, subcontractors and vendors;

i.      It failed to timely, properly, adequately and effectively communicate with local government agencies and officials in Bridgeport, Connecticut, to ensure that the defendant would be able to timely obtain a permanent certificate of occupancy fo the church;

j.      It failed to ensure that the church construction was completed in such a manner as to ensure that the defendant would be able to obtain a permanent certificate of

occupancy;

k.     It failed to obtain a permanent certificate of occupancy on

       behalf of the defendant;

l.     It failed to complete the management of the construction

       project;

m.     It abandoned the church construction project prior to its

       completion;

n.     It failed to timely, properly, and accurately account for the

       construction costs and to keep the defendant informed of

       those costs;

o.     It failed to timely, properly, and accurately keep records of

       the construction activities and of its dealings with

       contractors, subcontractors and local government officials;

p.     It failed or refused to timely provide documentation to the

       defendant of the construction costs, waivers of liens and

       other important construction documentation;

q.     It improperly authorized excessive payments to contractors,

       subcontractors and vendors;

r.     It improperly and without the knowledge, consent, or

       approval of the defendant, expanded the scope of work of

66

the contractors, subcontractors, and vendors;

s.   It improperly and without the knowledge, consent or
approval of the defendant, increased the contract prices,
authorized change orders, and otherwise substantially and
unreasonably increased the cost of the church construction
project;

t.   It made partial payments on outstanding invoices to
contractors, subcontractors, and vendors without the
knowledge, consent or permission of the defendant;

u.   It informed the defendant that it had made full payments on
outstanding invoices to contractors, subcontractors, and
vendors, when, in fact, it had informed the contractors,
subcontractors and/or vendors that payments were partial,
and it recommended that the contractors, subcontractors
and/or vendors seek additional payments from the
defendant;

v.   It misapplied payments received from the defendant;

w.   It improperly assessed "pre-payment penalties" that were not
properly owed; and/or

x.   Upon the death of Kenneth Moales, Sr., it improperly

67

demanded and compelled the defendant to make payment

of life insurance proceeds in excess of $1,000,000.

139.  The actions described above constitute breaches of the express and

implied obligations, promises and agreements contained in the following

contractual provisions:

a.   The plaintiff's oral promise and contract through its agents,

servants and employees, to provide construction

management and oversignt from the inception of the loan;

b.   Paragraph 5.02 of the Construction Loan Agreement, which

had effective date of December 12, 2007, which clause the

plaintiff exercised, and took over construction management;

and/or

c.   Paragraphs 4, 7, and 21.3[1] of the Adjustable Rate Secured

Note, dated December 12, 2007.

140.  As a result, the defendant has been required to take over

management of the construction itself, and has incurred additional costs to move

toward completion of the project.

---

[1]   The paragraphs of the Adjustable Rate Secured Note are not numbered
within the document.  This paragraph numbers are created by counting
full paragraphs in the document.  Paragraph 21.3 refers to the numbered
paragraph 3, under paragraph 21 on page 4 of the document.

141.  As a further result, the defendant has been unable to secure a permanent certificate of occupancy for the church.

142.  As a further result, the defendant incurred late fees, surcharges, interest charges, unnecessary material storage charges and re-deployment charges from its vendors, contractors and subcontractors due to the plaintiff's failure to fulfill its obligations of construction supervision, management and monitoring, and to make timely and complete payments as promised, and thus unnecessarily increasing the costs of construction.

143.  As a further result, the defendant has had multiple claims and lawsuits brought against it by contractors, subcontractors and vendors, who claimed that they had not been fully paid for their goods and services wshen plaintiff had represented to defendant that the contractors had indeed been paid. The defendant has been required to incur additional costs, including but not limited to substantial legal fees and investigatory fees to defend and settle these claims.

144.  As a further result, the defendant has been required to incur substantial legal fees, including the costs of bringing litigation, to obtain discharge of mechanics liens and other liens against the church property.

145.  As a further result, the defendant's Church Construction Project was not completed in a timely manner, and the defendant has been unable to secure

a permanent certificate of occupancy, which has caused the defendant to lose eligibility for federal grants and state funding for its early childhood education program, resulting in a loss of revenue to the defendant.

146.  As a further result, defendant suffered money damages including but not limited to excessive and improperly assessed late fees and excessive and improperly assessed interest charges, assessed by the plaintiff.

147.  As a further result, the defendant has suffered the loss of use of funds that it has overpaid to the plaintiff by virtue of the plaintiff's overcharging of late fees, "pre-payment penalties," interest and improper application of payments.

148.  As a further result, the defendant has suffered the loss of use of funds that it has overpaid to the plaintiff by virtue of the plaintiff's overcharging of interest and failing to apply funds properly, resulting in an improper inflation of the indebtedness of the defendant.

149.  The defendant's economic losses and damages exceed $1,000,000.

**COUNT THREE: Breach of Contract - September 2009 Loan and November 2009 Forbearance and Settlement Agreement**

1 - 137.  Paragraphs 1 through 137 of Count One are hereby made Paragraphs 1 through 137 of Count Three.

138.  The plaintiff breached its obligatoins under the September 14, 2009, Adjustable Rate Secured Note and the November 2009 Forbearance and Settlement Agreement, with effective dagte of October 30, 2009, in one or more of the following ways:

a.   It failed to timely, properly, competently and effectively supervise the construction of the church;

b.   It failed to timely, properly competently and effectively manage contractors, subcontractors and vendors on the church construction project to ensure that all work was performed in a workmanlike manner;

c.   It failed to timely, properly, competently and effectively manage contractors, subcontractors and vendors on the church construction project to ensure that all work was performed in a timely manner;

d.   It failed to fimely, properly, competently and effectively manage contractors, subcontractors and vendors on the church construction project to ensure that all work was performed within budget;

e.   It failed to timely, properly and effectively negotiate payments to contractors, subcontractors and vendors to

ensure that costs remained within budget;

f.      It failed to timely and fully pay contractors, subcontractors and vendors;

g.      It failed to negotiate with the contractors, subcontractors and vendors for payment for their services on the defendant's behalf;

h.      It failed to timely and properly obtain waivers of liens and/or settlements for payments that were made to contractors, subcontractors and vendors;

i.      It failed to timely, properly, adequately and effectively communicate with local government agencies and officials in Bridgeport, Connecticut, to ensure that the defendant would be able to timely obtain a permanent certificate of occupancy fo the church;

j.      It failed to ensure that the church construction was completed in such a manner as to ensure that the defendant would be able to obtain a permanent certificate of occupancy;

k.      It failed to obtain a permanent certificate of occupancy on behalf of the defendant;

l.    It failed to complete the management of the construction project;

m.    It abandoned the church construction project prior to its completion;

n.    It failed to timely, properly, and accurately account for the construction costs and to keep the defendant informed of those costs;

o.    It failed to timely, properly, and accurately keep records of the construction activities and of its dealings with contractors, subcontractors and local government officials;

p.    It failed or refused to timely provide documentation to the defendant of the construction costs, waivers of liens and other important construction documentation;

q.    It improperly authorized excessive payments to contractors, subcontractors and vendors;

r.    It improperly and without the knowledge, consent, or approval of the defendant, expanded the scope of work of the contractors, subcontractors, and vendors;

s.    It improperly and without the knowledge, consent or approval of the defendant, increased the contract prices,

authorized change orders, and otherwise substantially and
unreasonably increased the cost of the church construction
project;

t.    It made partial payments on outstanding invoices to
contractors, subcontractors, and vendors without the
knowledge, consent or permission of the defendant;

u.    It informed the defendant that it had made full payments on
outstanding invoices to contractors, subcontractors, and
vendors, when, in fact, it had informed the contractors,
subcontractors and/or vendors that payments were partial,
and it recommended that the contractors, subcontractors
and/or vendors seek additional payments from the
defendant;

v.    It misapplied payments received from the defendant,
including but not limited to the $1,700,000 payment made in
approximately April 2011.

139.  The foregoing actions constitute breaches of the express and
implied obligations, promises and agreements contained in the following
contractual provisions:

a.    The plaintiff's oral promise and contract through its agents,

74

servants and employees to provfide construction

management and oversignt from the inception of the loan;

b.   Paragraphs 3 and 18.2 of the September 2009 Adjustable

Rate Secured Note; and

c.   Paragraphs 4(e)(i) and 4(e)(iii).

140.  As a result, the defendant has been required to take over

management of the construction itself, and has incurred additional costs to move

toward completion of the project.

141.  As a further result, the defendant has been unable to secure a

permanent certificate of occupancy for the church.

142.  As a further result, the defendant incurred late fees, surcharges,

interest charges, unnecessary material storage charges and re-deployment

charges from its vendors, contractors and subcontractors due to the plaintiff's

failure to fulfill its obligations of construction supervision, management and

monitoring, and to make timely and complete payments as promised, and thus

unnecessarily increasing the costs of construction.

143.  As a further result, the defendant has had multiple claims and

lawsuits brought against it by contractors, subcontractors and vendors, who

claimed that they had not been fully paid for their goods and services wshen

plaintiff had represented to defendant that the contractors had indeed been paid.

The defendant has been required to incur additional costs, including but not limited to substantial legal fees and investigatory fees to defend and settle these claims.

144.  As a further result, the defendant has been required to incur substantial legal fees, including the costs of bringing litigation, to obtain discharge of mechanics liens and other liens against the church property.

145.  As a further result, the defendant's Church Construction Project was not completed in a timely manner, and the defendant has been unable to secure a permanent certificate of occupancy, which has caused the defendant to lose eligibility for federal grants and state funding for its early childhood education program, resulting in a loss of revenue to the defendant.

146.  As a further result, defendant suffered money damages including but not limited to excessive and improperly assessed late fees and excessive and improperly assessed interest charges, assessed by the plaintiff.

147.  As a further result, the defendant has suffered the loss of use of funds that it has overpaid to the plaintiff by virtue of the plaintiff's overcharging of late fees, "pre-payment penalties," interest and improper application of payments.

148.  As a further result, the defendant has suffered the loss of use of funds that it has overpaid to the plaintiff by virtue of the plaintiff's overcharging of

interest and failing to apply funds properly, resulting in an improper inflation of the indebtedness of the defendant.

149.  The defendant's economic losses and damages exceed $1,000,000.


### COUNT FOUR: Breach of Contract – 2012 Mortgage Modification Agreement regarding 2007 Loan

1 - 137.  Paragraphs 1 through 137 of Count One are hereby made Paragraphs 1 through 137 of Count Four.

138.  Paragraph 1 of the mortgage modification agreement, effective February 1, 2012, applicable to the 2007 Loan provided that the interest on the 2007 loan would be reduced to 6.25% per annum.

139.  The plaintiff breached its obligations under the 2012 Mortgage modification Agreements, with effective date February 1, 2012, regarding the 2007 loan in one or more of the following wans:

a.  Plaintiff has continued to charge defendant interest on the 2007 loan in excess of the 6.25% rate that was agreed after the effective date of the Mortgage Modificaton Agreement, in violation of Paragraph 1 of the Agreement; and

b.  Plaintiff has failed to apply payments made by the defendant in violation of Paragraphb 3 of the Agreement; and/or

77

      c.      Plaintiff has misapplied payments made by the defendant to interest on the 2007 and/or 2008 loans instead of first applying payments to the 2009 loan interest and principal in violation of Paragraph 3 of the Agreement.

140.  As a result, the defendant has suffered the loss of use of monies that it has overpaid to the plaintiff by virtue of the plaintiff's overcharging of interest and failing to apply funds properly, resulting in an improper inflation of the indebtedness of the defendant.

141.  Defendant's economic losses and damages exceed $1,000,000.

## COUNT FIVE: Breach of Copntract – 2012 Mortgage Modification Agreement regarding 2008 Loan

1 - 137.  Paragraphs 1 through 137 of Count One are hereby made Paragraphs 1 through 137 of Count Five.

138.  Paragraph 1 of the Mortgage Modification Agreement, effective March 1, 2012, applicable to the 2008 loan provided that the interest on the 2008 loan would be reduced to 6.25% per annum.

139.  Plaintiff breached its obligations under the 2012 Mortgage Modification Agreements, with effective date March 1, 2012, regarding the 2008 loan in one or more of the following ways:

a.   Plaintiff has continued to charge defendant interest on the 2008 loan in excess of the 6.25% that was agreed after the effective date of the Mortgage Modificatoin Agreement in violation of Paragraph 1 of the Agreement; and

b.   Plaintiff has failed to apply payments made by defendant, in violation of Paragraphs 2 and/or 3 of the Agreement; and/or

c.   Plaintiff has misapplied payments made by defendant to interest on the 2007 and/olr 2009 loans instead of first applying payments to the 2008 loan interest and principal, in violation of Paragraph 2 and/or 3 of the Agreement.

140.  As a result, defendant has suffered the loss of use of monies that it has overpaid to plaintiff by virtue of the plaintiff's overcharging of interest and failing to apply funds properly, resulting in an improper inflacton of the indebtedness of the defendant.

141.  Defendant's economic losses and damages exceed $1,000,000.

### COUNT SIX: Breach of Contract – 2012 Mortgage Modification Agreement Regarding 2009 Loan

1 - 137.  Paragraphs 1 through 137 of Count One are hereby made Paragraphs 1 through 137 of Count Six.

79

138.  Paragraph 2 of the Mortgage Modificatoin Agreement, effective March 1, 2012, applicable to the 2009 Loan provided that the interest on the 2009 Loan would be reduced to 6.25% per annum.

139.  The plaintiff breached its obligations under the 2012 Mortgage Modification Agreement, with effective dage March 1, 2012, regarding the 2009 Loan in one or more of the following ways:

      a.    Plaintiff has continued to charge defendant interest on the 2009 Loan in excess of the 6.25% that was agreed after the effective date of the Mortgage Modificatoin Agreement in violation of Paragraph 2 of the Agreement; and

      b.    Plaintiff has failed to apply payments made by defendant in violation of Paragraphs 3 and/or 4 of the Agreement; and/or

      c.    Plaintiff has misapploied payments made by defendant to interest, "late charges" and/or "prepayment penalties" on the 2007 and/or 2008 Loans instead of first applying payments to the 2009 Loan interest and principal in violation of Paragraphs 3 and/or 4 of the Agreement.

140.  As a result, defendant has suffered the loss of use of monies that it has overpaid to plaintiff byh virtue of plaintiff's overcharging of interest and failing to apply funds properly, resulting in an improper inflaction of the indebtedness of

80

the defendant.

141.  Defendant's economic losses and damges exceed $1,000,000.


**COUNT SEVEN: Violation of Conn. Gen. Stat. §§ 42-110a, et seq.**

1 - 137.  Paragraphs 1 through 137 of Count One are made Paragraphs 1 through 137 of Count Seven.

138.  The foregoing actions by the plaintiff constitute illegal, immoral, unethical, oppressive and unscrupulous methods, practices and conduct in trade or commerce, in violation of Sections 42-110a, et seq., of the Connecticut General Statutes.

139.  As a result, the defendant has suffered ascertainable losses, including but not limited to:

a.   increased, excessive, unnecessary and inflated costs of construction, totaling more than $1,700,000.00;

b.   late fees, interest charges, material storage charges, re-deployment charges, surcharges and other fees and costs assessed by its vendors, contractors and subcontractors;

c.   serttlements, legal fees, investigation fees, costs and other pecuniary losses associated with defending multiple claims, including lawsuits, brought by contractors, subcontractors,

and vendors;

d.    settlements, legal fees, investigation fees, costs and other

pecuniary losses required to clear mechanics liens and other

liens from the defendant's property, including costs and legal

fees associated with litigation;

e.    excessive and improperly assessed late fees, excessive and

improperly assessed interest charges, and excessive and

improperly assessed "pre-payment" penalties assessed by

plaintiff; and

f.    loss of revenue due to loss of federal grand funding and

state funding for the defendant's early childhood education

program.

## **COUNT EIGHT: Fraud**

1 - 137.  Paragraphs 1 through 137 of Count One are hereby made

Paragraphs 1 through 137 of Count Eight.

138.  As a result, the defendant has been required to take over

management of the construction itself, and has incurred additional costs to move

toward completion of the project.

139.  As a further result, the defendant has been unable to secure a

permanent certificate of occupancy for the church.

140.  As a further result, the defendant incurred late fees, surcharges, interest charges, unnecessary material storage charges and re-deployment charges from its vendors, contractors and subcontractors due to the plaintiff's failure to fulfill its obligations of construction supervision, management and monitoring, and to make timely and complete payments as promised, and thus unnecessarily increasing the costs of construction.

141.  As a further result, the defendant has had multiple claims and lawsuits brought against it by contractors, subcontractors and vendors, who claimed that they had not been fully paid for their goods and services wshen plaintiff had represented to defendant that the contractors had indeed been paid. The defendant has been required to incur additional costs, including but not limited to substantial legal fees and investigatory fees to defend and settle these claims.

142.  As a further result, the defendant has been required to incur substantial legal fees, including the costs of bringing litigation, to obtain discharge of mechanics liens and other liens against the church property.

143.  As a further result, the defendant's Church Construction Project was not completed in a timely manner, and the defendant has been unable to secure a permanent certificate of occupancy, which has caused the defendant to lose

eligibility for federal grants and state funding for its early childhood education program, resulting in a loss of revenue to the defendant.

144.  As a further result, defendant suffered money damages including but not limited to excessive and improperly assessed late fees and excessive and improperly assessed interest charges, assessed by the plaintiff.

145.  As a further result, the defendant has suffered the loss of use of funds that it has overpaid to the plaintiff by virtue of the plaintiff's overcharging of late fees, "pre-payment penalties," interest and improper application of payments.

146.  As a further result, the defendant has suffered the loss of use of funds that it has overpaid to the plaintiff by virtue of the plaintiff's overcharging of interest and failing to apply funds properly, resulting in an improper inflation of the indebtedness of the defendant.

## COUNT NINE: Violation of Conn. Gen. Stat. § 52-564

1 - 137.  Paragraphs 1 through 137 of Count One are made Paragraphs 1 through 137 of Count Nine.

138.  By virtue of the foregoing false representations and promises, plaintiff obtained valuable property, including but not limited to mortgage deeds upon multiple parcels of defendant's real estate, assignments of leases and

84

rents owing to the defendant, mortgage origination fees, fees ostensibly paid for provision of capital campaign fundraising services, and over three million dollars in payments that have been made by defendant to plaintiff none of which, upon information and belief, has been credited to the principal of the loans.

139.  The conduct descsribed above constitutes civil theft in violation of Connecticut General Statutes Section 52-564, by violation of General Statutes Sections 53a-119(3) and 53a-119(5)l.

WHEREFORE the defendant claims judgment against the plaintiff as follows:

A.      An accounting of each of the loans which is the subject of this litigation;

B.      Compensatory money damages;

C.      Interest and costs;

D.      Common law punitive damages;

E.      Punitive damages pursuant to Conn. Gen. Stat. § 42-110g.

F.      Costs and attorney fees pursuant to Conn. Gen. Stat. §42-110g;

G.      Treble damages pursuant to Conn. Gen. Stat. § 52-564;

H.      Equitable recission of the loans and mortgage agreements;

I.      Equitable reformation of the loans and mortgage agreements; and

J.      Such other and further relief as this court shall deem fair,

reasonable, and equitable.


***The defendant claims trial by jury***


THE DEFENDANT PRAYER TABERNACLE
CHURCH OF LOVE, INC.


BY:_____/s/_____
            JOHN R. WILLIAMS (ct00215)
            51 Elm Street
            New Haven, CT 06510
            203.562.9931
            Fax:  203.776.9494
            jrw@johnrwilliams.com


CERTIFICATION OF SERVICE

On the date above stated, a copy of the foregoing was filed electronically and
served by mail on anyone unable to accept electronic filing.  Notice of this filing
will be sent by e-mail to all parties by operation of the Court's electronic filing
system or by mail to anyone unable to accept electronic filing as indicated on the
Notice of Electronic Filing.  Parties may access this filing through the Court's
CM/ECF System.


_____/s/_____
JOHN R. WILLIAMS

86