UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FOUNDATION CAPITAL RESOURCES, INC., | : | |
| Plaintiff, | : | Civil Action No. 3:17-cv-0135(JAM) |
| v. | : | |
| PRAYER TABERNACLE CHURCH OF LOVE, INC. | : | |
| Defendant. | : | March 20, 2018 |

## PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY AND AS TO DEFENDANT'S SPECIAL DEFENSES AND COUNTERCLAIMS

Kristin B. Mayhew – ct20896
McElroy, Deutsch, Mulvaney & Carpenter, LLP
30 Jelliff Lane
Southport, CT 06890-1436
Tel. (203) 319-4000
Fax (203) 259-0251
Email: kmayhew@mdmc-law.com

# INTRODUCTION

Summary judgment must be granted in Plaintiff's favor with respect to all of the Defendant's affirmative defenses and Counterclaims as Defendant has not presented any evidence of disputed material facts with respect to the bases upon which Plaintiff seeks judgment. While the main thrust of Defendant's Opposition is that Plaintiff fraudulently induced Defendant to enter into three notes and mortgages, Defendant has not offered any evidence to overcome Plaintiff's arguments that such fraud claims are barred by the terms of the forbearance agreements, including the integration clauses and merger and release language and further, by the statute of limitations. Although Defendant paints itself as a sympathetic victim, unfortunately for the Defendant, the many loan documents, opinion letters, interest rate agreements, Construction Meeting minutes, forbearance agreements, affidavits of Joshua Bartlotti and Dr. Kregg Hood and Pastor Moales' own correspondence tell a far different story. Yet in the face of such overwhelming evidence, Defendant continues to press its duplicitous claim of "predatory lending" relying solely on the self-serving deposition testimony of Kenneth H. Moales for support. As discussed below, such testimony is insufficient to withstand a motion for summary judgment.

# ARGUMENT

I. **PLAINTIFF CAN MAINTAIN THIS ACTION AS IT NEVER UNLAWFULLY TRANSACTED BUSINESS IN THE STATE AS A MATTER OF LAW**

Defendant alleges that Plaintiff cannot maintain this foreclosure action because it does not have a certificate of authority to transact business in the state of Connecticut. Defendant further maintains that Plaintiff's actions are not exempt under either Connecticut General

Statutes Section 33-920(b)(7) and 33-920(b)(8) because Plaintiff did more than make mortgage loans to Defendant and seek to enforce its rights and remedies with respect to same. (Def. Obj. at p.4).[1] Instead, according to Defendant, "AG was neither acquiring indebtedness or securing the debt when its representatives set up shop in Bridgeport" for the purpose of "Faithraising." (Def. Obj. p. 4). The Defendant improperly and without any evidentiary support equates "AG" with the Plaintiff.

While Plaintiff concedes that it is a Georgia corporation, Plaintiff did not transact business in the state of Connecticut other than to make loans to Defendant and then seek to enforce same upon Defendant's default. The entity with whom the Defendant entered into a contract for the express purposes of receiving campaign fund raising consulting services is an affiliate of the Plaintiff. (Pltf Resp. at ¶4, Exh. A, pp. 5-6).[2] This fact is stated plainly on the face of the agreement which is "made and entered into by and between Masterplan Stewardship Services of the Assemblies of God Financial Services Group" and "Prayer Tabernacle Church of Love, Inc." (12/20/17 Bartlotti Aff. at ¶14, Exh. 3)[3]. It is beyond cavil that the Plaintiff in this action is not a party to that agreement and did not provide any campaign fundraising services to the Defendant. For the Defendant to assert anything to the contrary is at best an oversight, and at worst, an intentional misrepresentation to the Court.

Nor is there any evidentiary support for Defendant's assertions that Plaintiff assumed responsibility for the construction of the project. As stated above, AG is not the Plaintiff – AG

---

[1] "Def. Obj." refers to Defendant's Brief in Opposition to Motion For Summary Judgment [ECF No. 92]
[2] "Pltf Resp." refers to Plaintiff's Response to Defendant's Statement of Material Facts filed simultaneously herewith.
[3] "12/20/17 Bartlotti Aff." refers to The Affidavit of Joshua Bartlotti dated December 20, 2017 and efiled simultaneously with Plaintiff's Motion for Summary Judgment [ECF No. 87].

2

KBM/233616/0006/1491815v3
03/20/18-HRT/KLW

is a shareholder and affiliate of FCR. (Pltf. Resp. at ¶4, Exh. A, pp. 5). Nor did the Plaintiff ever assume construction of the project. The construction of the Project was at all times the responsibility of the Defendant, its construction manager, Tri-Con Construction Managers, LLC and Sigmund Morriar. (Pltf. Resp. at ¶¶10-12, Exh. C and D). From February, 2007 until Tri-Con walked off the job in March, 2009, the Project was managed by Tri-Con. (Pltf. Resp. at ¶¶10-12, Exh. C and D). After Tri-Con left the job, the Project was managed by the Defendant and its staff, including Sigmund Morriar. (Pltf. Resp. at Exh. B, ¶¶16-17). This is clear from Pastor Moales own correspondence, "[a]s of August 3, 2010, Sigmund Morriar, our Construction Manager, has reported back to Bishop Kenneth Moales, Sr. and the Trustee Board that the bank will not be issuing any additional funds to obtain our building's Certificate of Occupancy." (Pltf. Resp. at Exh. B, ¶17).

Moreover, the only evidence Defendant relies on in support of its argument that "the plaintiff and AG operated as a single entity" does nothing of the sort. Defendant points to various Campaign Leadership Memos from Larry Russell (an employee of AG Financial) to Bishop Moales concerning the status of the Campaign Leadership program. These memos prove only that Defendant hired AG Financial to provide campaign consulting services to help the Defendant raise money to re-pay its loan from the Plaintiff. There is absolutely nothing in these memos or Dr. Hood's book that indicate that the Plaintiff and AG Financial are the same entity.

## II. Defendant's Reliance on Self-Serving Deposition Testimony in Support of its Fraud Claim is Insufficient to Defeat Summary Judgment

Defendant concedes, as it must, that it signed all of the documents that the Plaintiff has submitted in support of its Motion for Summary Judgment. In fact, Defendant admits all but 4

KBM/233616/0006/1491815v3
03/20/18-HRT/KLW

of the 127 paragraphs of Plaintiff's Statement of Undisputed Facts. This alone should be sufficient to grant summary judgment in Plaintiff's favor. Notwithstanding these critical admissions, Defendant claims that it was fraudulently induced to sign not one, not two, but three sets of loan documents. Not surprisingly, the only support for Defendant's claim of fraud is Pastor Moales' own deposition testimony.

"The law is clear that self-serving affidavits and statements, standing alone, are insufficient to defeat summary judgment." *In re Xiang Yong Gao*, 560 B.R. 50, 59 (Bankr. E.D.N.Y. Sept. 30, 2016). As the Second Circuit held in *Carey v. Crescenzi*, "Defendants presented no evidence to support this implausible claim, however, and in order to avoid summary judgment, a party "must do more than simply show that there is some metaphysical doubt as to the material facts." 923 F.2d 18, 21 (1991), *quoting Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). "The defendants' bald assertion, completely unsupported by evidence, did not satisfy their burden; it certainly did not "present [] a sufficient disagreement to require submission to a jury" as required by Fed.R.Civ.P. 56(c)." *Id.* at 21.

Not only will self-serving *affidavits* not defeat summary judgment, but neither will self-serving *deposition testimony*. It is well accepted that a party's own self-serving testimony during a deposition cannot defeat summary judgment where no reasonable jury could find in the defendant's favor. *Houston v. Dialysis Clinic, Inc.*, Civ. Action No. 13-4461 (FLW), 2015 WL 3935104, at *14 (D. N.J. June 26, 2015). "Conclusory, self-serving affidavits [and testimony] are insufficient to withstand a motion for summary judgment." *See generally Gonzalez v. Secretary of Dept of Homeland Security*, 678 F.3d 254, 263 (3d Cir. 2012); *Irving*

4

*v. Chester Water Auth.*, 439 Fed. Appx. 125, 127 (3d Cir. 2011)(holding that "self-serving deposition testimony is insufficient to raise a genuine issue of material fact"); *Jordan v. Cicchi*, Civ. No. 10-4398, 2014 WL 2009089, at *2 (D.N.J. May 16, 2014)("the issue is not whether Plaintiff has relied solely on his own testimony to challenge [a summary judgment motion], but whether Plaintiff's testimony, when juxtaposed with the other evidence, is sufficient for a rational factfinder to credit Plaintiff's testimony, despite its self-serving nature"); *Johnson v. MetLife Bank, N.A.*, 883, F.Supp. 2d, 542, 549 (E.D. Pa. 2012); *Scott v. Harris,* 550 U.S. 372, 380 (2007) and *Danois v i3 Archive, Inc.*, Civil Action No. 11-3856, 2013 WL 3556083 at *10 (E.D. Pa. July 12, 2013)(finding that plaintiffs' reliance on their self-serving deposition testimony cannot create an issue of fact on summary judgment since "the Third Circuit has extended to deposition testimony the principle that 'conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment.'").

In support of its fraud claim, the Defendant relies solely upon the deposition testimony of Pastor Moales. He asserts that the Plaintiff promised to make loans with an interest rate below 6.5%, that the Plaintiff would lend Defendant 80% to 100% of the amounts of money pledged by the congregation pursuant to the Capital Campaign, that the Plaintiff would waive interest and that Plaintiff would loan the full amount of any construction costs. (Def. Statement of Facts, ¶¶ 6, 7, 9, 10, and 15). And yet, remarkably, none of these promises are reflected in any email correspondence between the parties, in any written correspondence between the parties, in any letters of intent or loan commitments, and are certainly not terms in the loan agreements themselves. In fact, the opposite is true. All of the loan documents, including the Interest Rate Agreements, the Construction Loan Agreement, and the multitude

5

of Opinion Letters from the Defendant's own counsel contradict the self-serving testimony given by Pastor Moales. Moreover, Dr. Kregg Hood flatly rejects these allegations as untrue. (Pltf. Resp. at Exhibit B, ¶¶ 18-25).

Since the only evidence of fraud that Defendant relies upon is the testimony of Pastor Moales, such evidence is insufficient to withstand summary judgment. It is well accepted that, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. at 380. Moreover, while a district court generally "should not weigh evidence or assess the credibility of witnesses" at the summary judgment stage,

> in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff' . . . and thus whether there are any 'genuine' issues of material fact, without making some assessment of the plaintiff's account.

*Rojas v. The Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104-105 (2d Cir. 2011)(affirming District Court's grant of summary judgment in favor of defendant where plaintiff's opposition to summary judgment relied almost entirely on her own testimony, in the form of an affidavit and excerpts from her depositions).[4]

### III. The Merger Clause Containing Anti-Reliance Language Bars Defendant's Fraud Claim As A Matter of Law

Defendant alleges that the Merger Clause that is undeniably contained in all three (3)

---

[4] Defendant's argument that Pastor Moales' testimony must be accepted for purposes of summary judgment is an incorrect statement of the law. (Def. Obj. at p. 6). Moreover, Defendant's reliance on *Kaytor v. Electric Boat Corporation* for this proposition is misplaced. *Id*. In *Kaytor*, the Second Circuit cautions against making credibility determinations at the summary judgment stage. 609 F.3d at 545-46. *Kaytor*, however, did not involve a party's reliance on self-serving affidavits and/or testimony and is distinguishable on this basis. Moreover, *Rojas* was decided by the Second Circuit after its decision in *Kaytor*, and therefore remains good law.

KBM/233616/0006/1491815v3
03/20/18-HRT/KLW

notes as well as the March 2009 Forbearance and October 2009 Forbearance cannot bar a claim of fraud. (Def. Obj. at pp. 7-8). Defendant relies on three (3) cases for its position. Interestingly, in all three cases, the courts held that extrinsic evidence should not have been considered in the face of a merger agreement.[5] None of the cases cited by the Defendants involve a party's reliance on a merger clause to defeat a fraud in the inducement claim. As such, Defendant's legal authority is not persuasive on this point. The cases cited by Plaintiff, on the other hand, expressly provide that merger clauses that contain explicit anti-reliance representations which make clear that a party is not relying on oral agreements outside the four corners of an agreement can operate to bar a fraud claim. (Plaintiff's Brief at pp.25-26)[6].

### IV. Defendant Expressly Waived and Released Any And All Defenses and Counterclaims Against Plaintiff

Plaintiff asserts that Defendant expressly waived and released any and all defenses, including fraud, unconscionability, and unclean hands as well as all counterclaims against Plaintiff that may have existed as of October, 2009 as a matter of law by virtue of the parties' October 30, 2009 Forbearance and Settlement Agreement. (Plaintiff's Brief at pp.27-31). The Defendant cites two cases in support of its contention that the waiver and release language contained in the March 2009 Forbearance and October, 2009 Forbearance does not operate as a bar to these claims. (Def. Obj. at p.8).

---

[5] *See Tallmadge Bros., Inc. v. Iroquois Gas Transmission System, L.P.*, 252 Conn. 479, 502-504 (2000)(concluding that the parties possessed relatively equal bargaining power, and they executed the settlement agreements after a lengthy drafting process with the advice of counsel and thus held that the insertion of the merger clauses into the settlement agreements barred extrinsic evidence); *Channing Real Estate, LLC v. Gates*, 326 Conn. 123, 132 (2017)(finding that the clause in each note prohibiting oral modification is clear and upholding Appellate Court's determination that parol evidence rule barred the introduction of extrinsic evidence) and *Adler & Shaykin v. Wachner*, 721 F.Supp. 472, 479-480 (S.D.N.Y. 1988)(parol evidence offered to contradict the terms of a fully integrated contract was inadmissible).

[6] "Plaintiff's Brief" refers to Plaintiff's Memorandum of Law in Support of its Motion For Summary Judgment dated December 20, 2017 [ECF No. 87].

7

Defendant's reliance on *Carpender v. Sigel* for its assertion that there was no waiver or release as a matter of law in misplaced. (Def. Obj. at p.8). At issue in *Carpenter* was whether a former husband had waived his right to seek reimbursement from his ex-wife for certain educational and extracurricular activities for their minor son. 142 Conn.App. 379, 385-88. The trial court denied the former husband's motion for contempt against his ex-wife for failing to pay such expenses in part on its finding that laches, waiver and estoppel barred the husband's right to seek reimbursement. *Id.* at 381-82. On appeal, the Supreme Court reversed finding no laches, waiver or estoppel. *Id.* at 385.

The *Carpender* opinion is distinguishable for several reasons. First, the facts in *Carpender* which involved a dispute between a former husband and wife over payment of their minor son's expenses does not remotely resemble the facts of this case involving a commercial, arms-length loan transaction between a lender and borrower. Second, the *Carpender* case did not even involve a forbearance agreement. And finally, the *Carpender* Court was not faced with the interpretation of express waiver and release language in an agreement between two parties. For these reasons, *Carpender* is wholly inapplicable.

Nor does *Bank of Boston Connecticut v. Avon Meadow Associates* cited by Defendant support its position. 40 Conn.App. 536 (1996). In *Bank of Boston*, a lender sued its borrowers to collect on certain unpaid promissory notes and they counterclaimed for an alleged breach of an oral agreement. *Id.* at 539. In response, the bank argued that a forbearance agreement entered into by the parties after the borrowers' default constituted a release by the defendants of their counterclaim. *Id.* After a jury trial, the jury returned a verdict in favor of the plaintiff bank on both its claim and on the defendants' counterclaim. *Id.* On appeal, the

KBM/233616/0006/1491815v3
03/20/18-HRT/KLW

borrowers alleged that the release language was ineffective as to the defendant's counterclaim as a matter of law. *Id.* at 540. The Appellate Court rejected the borrowers' argument on the basis that the language of the release was internally inconsistent and therefore, there was a question of fact as to what the parties intended. Id. at 540-541.

Unlike in *Bank of Boston*, the release language contained in the October, 2009 Forbearance is neither ambiguous nor internally inconsistent. In Paragraph 3(b), the Defendant "acknowledges and represents" that there are no defenses or counterclaims to the enforcement of the Notes and if they exist, they are "forever waived and released by the Debtors." [12/20/17 Bartlotti Aff. at ¶75]. Pursuant to this plain language, the Defendant clearly and undeniably waived and released all defenses to this foreclosure action as well as any and all counterclaims.

V. **Defendant's Counterclaims That Are Admittedly Barred by the Statute of Limitations Cannot Be Saved Under Setoff or Recoupment Theories**

Defendant does not deny that the statute of limitations has run with respect to its Counterclaims. Instead, Defendant takes the position that there is an exception to the general rule that a counterclaim can be barred by a statute of limitations by virtue of theories of setoff or recoupment. There is no support in the law for Defendant's novel argument. First, Defendant has never pled theories of setoff or recoupment in connection with this foreclosure action. Second, even if it had pled setoff or recoupment, there is no legal basis for the Court to conclude that Defendant's Counterclaims can survive a statute of limitations challenge on such basis.

Defendant's reliance on *Genovese v. J.N.Clapp Company, Inc.* is misplaced. 4 Conn. app. 443 (1985). The facts in *Genovese* bear no resemblance to those in the case at bar and the

9
KBM/233616/0006/1491815v3
03/20/18-HRT/KLW

case does not even involve the statute of limitations. The *Genovese* case involved a suit by an administratrix against an entity who allegedly owed $20,000 to the decedent prior to his death. *Id*. at 444. The defendant did not file a claim against the estate within the time required by C.G.S.A. §45-205 because the decedent owed him $37,000. *Id*. The Appellate Court held that even though the defendant did not file a timely claim, the defendant could defeat the administratrix's claim for payment based on its recoupment defense. *Id*. at 445-446.

The *Genovese* holding is unique to probate matters involving claims against estates. That case has no applicability to the case at bar or to statutes of limitation in general. Moreover, the Defendant has never even asserted a claim of setoff or recoupment and cannot do so at the eleventh hour to preserve its Counterclaims which are barred by the applicable statute of limitations.

Nor does Defendant's reliance on *Premier Capital, Inc. v. Grossman* help its cause on this issue. 68 Conn.App. 51 (2002). That case stands simply for the unremarkable proposition that recoupment can reduce one party's claim against another. *Id*. at 54-59. *Premier Capital*, however, did not involve a counterclaim that was barred by the statute of limitations. The case is silent on that point and dealt only with whether there was evidence to support the defendant's recoupment claim. *Id*.

Given that none of the cases cited by Defendant support its argument that its Counterclaims should be allowed under a theory of recoupment even though they are time-barred and even though the Defendant has never pled setoff or recoupment, summary judgment must be granted in favor of the Plaintiff with respect to Defendant's Counterclaim for fraud, breach of contract, CUTPA, and conversion/theft as all such claims are barred by the statute of limitations.

KBM/233616/0006/1491815v3
03/20/18-HRT/KLW

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Court grant summary judgment in its favor as to liability and with respect to the Defendant's four Special Defenses and all nine Counts of its Counterclaim.

PLAINTIFF FOUNDATION CAPITAL RESOURCES, INC.

By     /s/ Kristin B. Mayhew
Kristin B. Mayhew (ct20896)
McElroy, Deutsch, Mulvaney & Carpenter, LLP
30 Jelliff Lane
Southport, CT 06890-1436
Tel. (203) 319-4000
Fax (203) 259-0251
Email: kmayhew@mdmc-law.com

## CERTIFICATE OF SERVICE

This is to certify that on March 20, 2018, a copy of the foregoing (1) Plaintiff's Reply to Defendant's Brief in Opposition To Motion for Summary Judgment As To Liability And As To Defendant's Special Defenses And Counterclaims, (2) Plaintiff's Response to Defendant's Statement of Material Facts, with Exhibits A, B *(Affidavit of Dr. Kregg Hood dated March 19, 2018 attaching Exhibits 1 through 7)*, C, D and E *(Affidavit of Joshua Bartlotti dated March 19, 2018)*, were filed electronically and served by mail on the parties identified below. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                          */s/ Kristin B. Mayhew*
                                                          Kristin B. Mayhew